UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HIGH TECH PET PRODUCTS, INC.,

    Plaintiff,

v.                                                   Case No:   6:14-cv-759-Orl-22TBS

SHENZHEN JIANFENG ELECTRONIC
PET PRODUCT CO., LTD. and VELLY
WEI,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff High Tech Pet Products, Inc.'s Renewed Motion for Default Judgment and Permanent Injunction (Doc 44).  Upon due consideration I respectfully recommend that the motion be **GRANTED**.

### Background

Plaintiff, a manufacturer of electronic pet fencing and behavior modification systems, filed this lawsuit against Defendants Shenzhen Jianfeng Electronic Pet Product Co., Hongming Tang, and Velly Wei in the United States District Court for the Eastern District of California (Doc. 2).  Plaintiff's complaint asserts claims for registered and unregistered trademark infringement, trade dress infringement, and unfair competition under the Lanham Act as well as similar state-law claims (Id.).  The complaint alleges that Plaintiff owns the registered mark "Bark Terminator" for use in the advertising and sale of dog training collars and the unregistered marks "Humane Contain," "Proportional Stimulus," "Pulsed Proportional Stimulus," and "Speed Detect" in the advertising and sale of its electronic pet fences (Id., ¶¶ 9-11, 13, 21-23, 25, 51-52).  Plaintiff also alleges that it

owns a distinctive trade dress in the product packaging and marketing materials that consumers have come to associate with Plaintiff (Id., ¶ 59).  According to the complaint, Defendants have used Plaintiff's registered and unregistered marks, as well as a confusingly similar trade dress, in advertising and selling Defendants' own electronic pet fencing and behavior modification systems (Id., ¶¶ 15-16, 26-28, 32).

On February 20, 2013, at the Global Pet Expo in Orlando, Florida Plaintiff served a summons and copy of its complaint for each Defendant on Defendant Velly Wei, who identified herself as the managing agent of Defendant Shenzhen (Docs. 8, 9).  On February 26, Plaintiff mailed an additional copy of the summons and complaint to an address shown on Wei's business card (Doc. 8).  Defendants did not answer or respond to the complaint and on September 16, 2013 the clerk of court in California entered default as to both Wei and Shenzhen (Doc. 16).  On October 23, 2013, Plaintiff moved for a default judgment and a permanent injunction against both Defendants (Doc. 19).  On May 9, 2014, the United States District Court for the Eastern District of California entered an order denying Plaintiff's motion based on lack of personal jurisdiction over Defendants and transferring the case here, to the Middle District of Florida (Doc. 29).

Plaintiff filed its Renewed Motion for Default Judgment and Permanent Injunction in this Court on September 23 (Doc. 44).  In its motion, Plaintiff asks the Court to find this case "exceptional" pursuant to 15 U.S.C. § 1117(a) and grant it leave to submit evidence on the issue of attorney's fees (Id. at 12-13, 15).  Plaintiff also alleges that since the case began, Defendants have begun marketing their products using Plaintiff's registered "High Tech Pet" mark (Doc. 44, p. 6; Doc. 44-1, pp. 5-6).

On January 28, 2015, I ordered Plaintiff to submit adequate proof that Defendant Wei was not on active duty in the United States Military (Doc. 51).  On February 11,

Plaintiff filed a response stating that it was unable to ascertain whether Wei was a member of the military, largely because Plaintiff has not been able to locate a Social Security number or date of birth for Defendant Wei (Doc. 52).

## Discussion

### A. Threshold Issues

As an initial matter, I find that the entry of default by the California clerk was proper.  The federal rules require court clerks to enter a defendant's default "[w]hen service of process is properly effected, but the served party fails to respond in a timely manner…."  Kelly v. Florida, 233 Fed. Appx. 883, 885 (11th Cir. 2007) (citing FED. R. CIV. P. 55(a)).  An individual may be served by delivering a copy of the summons and complaint to the individual personally inside the United States.  FED. R. CIV. P. 4(e)(2)(A).  Thus, service of process on Wei was achieved when the process server handed the summons and complaint to her at the Pet Expo in Orlando (Doc. 9).  A foreign corporation can be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  FED. R. CIV. P. 4(e)(1).  Section 416.10(b) of the California Code of Civil Procedure provides that service of process on a corporation may be accomplished by delivering a copy of the summons and complaint to the corporation's president, vice president, secretary, treasurer, assistant treasurer, general manager, or other person authorized to receive service of process.  Service of the complaint and summons for Shenzhen on Wei, who identified herself to the process as the "managing agent" of Shenzhen (Doc. 8), sufficed to accomplish service on Shenzhen.  Ault v. Dinner for Two, Inc., 27 Cal. App. 3d 145, 150 (1972).

Pursuant to Rule 12(a)(1), Defendants were required to respond to the complaint within twenty-one (21) days from the date of service–in other words, by March 13, 2013. Defendants failed to respond and have otherwise failed to appear in this action. Thus, the clerk's defaults were properly entered.

I also find that Defendants are subject to personal jurisdiction in this Court. Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, Defendants are subject to personal jurisdiction in this Court if they would be subject to jurisdiction in the state courts in Florida. Unless the forum state authorizes its own courts to exercise jurisdiction to the limits of what the Constitution allows (and Florida does not, see Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla. 1989)), a federal court must conduct a two-step inquiry to determine whether it has personal jurisdiction over a particular defendant. See Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d, 1312, 1319 (11th Cir. 2004). First, exercising personal jurisdiction must be appropriate under one of the provisions of Florida's long-arm statute. Id.; see FLA. STAT. § 48.193. If so, then the Court must determine whether the exercise of jurisdiction over the defendant would violate due process. Mutual Serv., 358 F.3d at 1319.

The Florida long-arm statute authorizes jurisdiction over persons who commit a tortious act within the state, FLA. STAT. § 48.193(1)(a)(2), and trademark infringement is a tort within the meaning of the Florida long-arm statute, see Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1353-54 (11th Cir. 2013). Defendants are subject to personal jurisdiction under the Florida long-arm statute because they marketed and sold products bearing Plaintiff's trademarks and trade dress at the Global Pet Expo in Orlando in February 2013. (Doc. 25, ¶¶ 2-4, 8). In doing so, they infringed Plaintiff's trademarks and trade dress. Defendants' action also subjected them to long-arm jurisdiction

pursuant to FLA. STAT. § 48.193(1)(a)(6)(a), because Defendants caused injury to Plaintiff while engaging in solicitation within the state of Florida.

The same act also sufficed to establish "minimum contacts" between Defendants and the state of Florida, such that courts in Florida may exercise jurisdiction over Defendants consistent with the requirements of due process. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). For a state to exercise specific, or case-linked, jurisdiction over a defendant, "the defendant's suit-related conduct must create a substantial connection with the forum state." Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (internal quotations omitted). Here, Defendants committed a tortious act (selling goods bearing Plaintiff's trademarks and trade dress) in Florida, which caused harm (consumer confusion) in Florida. This is enough to establish jurisdiction over Plaintiff's claims arising from the tortious conduct.

Finally, I find that the Servicemembers Civil Relief Act does not prevent entry of default judgment against Defendant Wei. Plaintiff's response stating that Plaintiff was not able to ascertain Defendant's military status satisfies the affidavit requirement in the SCRA. 50 U.S.C. appx. § 521(b)(1)(B), (c); (Doc. 52). While the Court has the discretion to require posting of a bond as a prerequisite to entry of a default judgment in such a case, Id. § 521(b)(3), I decline to recommend requiring a bond since it seems highly unlikely to me that Wei is actually a member of the United States military.

B.  There is a Sufficient Basis for Entry of Default Judgment Against Defendants

The entry of a default by the Clerk does not require the court to enter a default judgment. DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005). Before judgment can be entered pursuant to FED. R. CIV. P. 55(b), there must be a sufficient basis in the pleadings to support the relief sought. Id. "The defendant is not

- 5 -

held to admit facts that are not well-pleaded or to admit conclusions of law.   In short ... a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover."   Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

Whether or not a trademark is registered, the basic elements of trademark infringement are the same.   To establish a claim for trademark infringement, the plaintiff must show "that (1) its mark is entitled to protection and (2) the defendant 'adopted an identical or similar mark such that consumers were likely to confuse the two.'"   Sovereign Military Hospitaller Order of Saint John v. Florida Priory of Knights Hospitallers, 702 F.3d 1279, 1293 (11th Cir. 2012) (quoting Int'l Stamp Art, Inc. v. U.S. Postal Service, 456 F.3d 1270, 1274 (11th Cir. 2006) (per curiam)); Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010); 15 U.S.C. §§ 1114; 1125.   The owner of a registered trademark discharges his burden of proof on the first element by providing a certificate of registration issued by the United States Patent and Trademark Office, which is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the certificate."   15 U.S.C. § 1057(b).   By contrast, a plaintiff bringing a claim for infringement of an unregistered trademark bears the burden of proving that it has a protectable interest in the mark in question.   To do so, the plaintiff must show that the mark is "distinctive."   Investacorp., Inc. v. Arabian Investment Banking Corp., 931 F.2d 1519, 1522 (11th Cir. 1991).   It must also show that it is used the mark first–in trademark parlance, that it is the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

"senior" user of the mark.   Tally-Ho, Inc. v. Coastal Community College Dist., 889 F.2d 1018, 1023 (11th Cir. 1989).

"Distinctiveness" may be established in one of two ways.   First, a plaintiff may show that its mark is inherently distinctive by showing that the mark is either "fanciful" or "suggestive."   Welding Services, Inc. v. Forman, 509 F.3d 1351, 1357 (11th Cir. 2007). A mark is fanciful if it "bears no logical relationship to the product or service it is used to represent."   Id.   A mark is suggestive if it "refers to some characteristic of the goods, but requires a leap of imagination to get from the mark to the product."   Id.   Second, if a plaintiff's mark is merely "descriptive" of the product the plaintiff sells–that is, if it "identifies a characteristic or quality of the service or product"–the plaintiff must show that its mark has obtained "secondary meaning" in that customers have associated it with plaintiff's product.   Id. at 1358.   Finally, "generic marks," or names "by which the product or service itself is commonly known," can never acquire secondary meaning and therefore are never entitled to protection.

Plaintiff alleges that it registered the "Bark Terminator" mark, and has produced a certificate of registration issued by the United States Patent and Trademark Office. (Doc. 2, p. 28).   This is sufficient to establish that Plaintiff's "Bark Terminator" mark is entitled to protection under § 1114.   15 U.S.C. § 1057(b).   Plaintiff has also alleged, and Defendants therefore have admitted, that Plaintiff used the marks "Humane Contain," "Proportional Stimulus," "Pulsed Proportional Stimulus," and "Speed Detect" continuously since 2000; that customers associate pet fencing systems bearing these marks with Plaintiff; and that Defendants began using these marks in 2011.   (Doc. 2, ¶¶ 10-13). Thus, Plaintiff has established that these unregistered marks are entitled to protection.

In determining whether a defendant's use of a mark is likely to cause confusion, courts consider the following seven factors:

> (1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public.

Welding Services, Inc. v. Forman, 509 F.3d 1351, 1360 (11th Cir. 2007) (citing Conagra, Inc. v. Singleton, 743 F.2d 1508, 1514 (11th Cir. 1984).  Factors (2) through (4) weigh strongly in Plaintiff's favor, as Defendants have used the same marks in marketing and selling the same products to the same customer base.  So does factor (5); both Plaintiff and Defendants market and sell their products online (see Doc. 2, pp. 19-35) and at trade shows in the United States (see Doc. 25, ¶¶ 2-4). The sixth factor weighs overwhelmingly in Plaintiff's favor, because the only plausible inference from the exhibits attached to the complaint is that Defendant copied not only Plaintiff's marks letter-for-letter–including the trademark symbol–but also the context in which the marks are used (*i.e.*, Plaintiff's trade dress).  Therefore, I find that Plaintiff has pled sufficient facts to establish a claim for infringement of its registered and unregistered marks.

Plaintiff also asserts a claim for trade dress infringement under the Lanham Act. Section 43(a) of the Lanham Act subjects to civil liability any person who, in marketing or selling goods or services, uses a "word, term, name, symbol, device, or any combination thereof, or any false designation of origin," or any misrepresentation of fact that is likely to cause confusion as to the origin of the product, the association of that person with another, or approval or sponsorship of the person's product by another.  15 U.S.C.

§ 1125(a)(1)(A).  Courts have construed § 43(a) to protect "trade dress," which is defined as "the total image of a product ... [that] may include features such as size, shape, color or color combinations, textures, graphics, or even particular sales techniques."  John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 982 (11th Cir. 1983).  "In order to prevail on a claim for trade dress infringement under § 43(a), a plaintiff must prove three elements: (1) that the trade dress of the two products is confusingly similar; (2) that the features of the trade dress are primarily non-functional; and (3) that the trade dress is inherently distinctive or has acquired secondary meaning."  Epic Metals Corp. v. Souliere, 99 F.3d 1034, 1038 (11th Cir. 1996).

Plaintiff's complaint does not allege that its trade dress is nonfunctional.  There is a split in the circuits over whether a Plaintiff must plead and prove nonfunctionality as an element of a trade dress claim, or whether Defendant must plead and prove functionality as an affirmative defense.  See Epic Metals, 99 F.3d at 1038, n. 11 (noting circuit split but declining to take a side).  But, the factual allegations in Plaintiff's complaint are more than sufficient to show that at least some of the elements of the trade dress are nonfunctional.  Plaintiff's trade dress includes elements like color scheme and layout of product packaging, which is usually not functional, and there is no reason to believe this case is atypical in this regard.  To state a claim under Rule 8(a), a plaintiff need only "inform[] [Defendants] of the factual basis for their complaint," see Johnson v. City of Shelby, 574 U.S. __, __, 135 S.Ct. 346, 347 (2014), and Plaintiff has done so.

The other elements of the trade dress claim present no obstacle to entry of default judgment.  Plaintiff has pled, and Defendants have admitted, that Defendants' advertise and ship their products in packaging that is "striking[ly] similar[]" to Plaintiff's, and that this has caused confusion and will likely continue to cause confusion among customers

concerning the relationship between Plaintiff's and Defendants' products (Doc. 2, ¶¶ 32, 35, 61). Plaintiffs allege, and Defendants have admitted by virtue of their default, that Defendants' conduct was intentional (Id., ¶ 35). Moreover, as noted above, the packaging used by Defendants' looks strikingly similar to the packaging used by Plaintiff (See Doc. 2, pp. 19-26). Finally, Plaintiffs allege and Defendants admit that the product packaging and other elements of Plaintiff's trade dress comprise a "distinctive design, which purchasers have come to associate with HTPP and HTPP's products." (Doc. 2, ¶ 59). This is sufficient to establish secondary meaning. Accordingly, I find there is a sufficient basis to conclude that Defendants have infringed Plaintiffs' trade dress.

Plaintiff's remaining two claims allege "false designation of origin" and "false advertising" in violation of § 43(a). These claims are redundant of the trademark and unregistered trade dress infringement claims brought under the same section. Entry of judgment on counts III and IV renders these counts moot and I recommend they be dismissed. Finally, Plaintiff does not request entry of judgment or otherwise discuss Counts V through VIII, all of which arise under the law of California. I recommend these counts be dismissed without prejudice.

C. Plaintiff is Entitled to Injunctive Relief

The Court may enjoin violations of trademark laws "according to the principles of equity and upon on such terms as the court deems reasonable." 15 U.S.C. § 1116(a). "[W]ell-established principles of equity" generally require a plaintiff seeking a permanent injunction to demonstrate

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in

> equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).  "The decision to grant or deny a permanent injunction is an act of equitable discretion by the district court." AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1551-52 (11th Cir. 1986).

Plaintiff has suffered and continues to suffer irreparable injury from Defendants' infringement of its trademark and trade dress.  While Plaintiff may be able to win a monetary judgment based on future infringement, it should not be required to litigate in order to prevent Defendants from potentially jeopardizing the goodwill Plaintiff has established with consumers in the marketplace.  Moreover, it is unclear that Plaintiff will be able to actually recover money damages from Defendants, who are located in China, a country not known for zealously enforcing intellectual property laws or infringement judgments.  Given the willfulness of the infringement, the balance of the equities tips in Plaintiffs' favor.  Finally, an injunction is in the public interest.  Defendant's infringement of Plaintiff's mark harms not only Plaintiff, but also the consumers Defendants mislead.

D.  Crafting a Proper Injunction

Rule 65(d)(1) requires that "[e]very order granting an injunction ... (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail–and not by referring to the complaint or other document–the act or acts restrained or required."  These provisions are not "mere technical requirements," Schmidt v. Lessard, 414 U.S. 473, 476 (1974), but important safeguards rooted in constitutional due process concerns.  Because a party who violates an injunction may be subject to criminal contempt, a party subject to one is entitled to "fair warning" of "what [conduct] is prohibited."  Grayned v. City of Rockford, 408 U.S. 104, 109 (1972).  Rule 65 is

<pre>
</pre>

<pre>
</pre>

<pre>
</pre>

"designed to prevent uncertainty and confusion" about the scope of injunctions, Schmidt, 414 U.S. at 476, by requiring district courts who write them to "frame [their] orders so that those who must obey them will know what the court intends to require and what it means to forbid." Int'l Longshoreman's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967). The Court has "an independent duty to assure that the injunctions it issues comply with" Rule 65. Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 632 (7th Cir. 2003).

An injunction is appropriate because Defendants have infringed Plaintiff's trademarks, may continue to do so unless enjoined, and because Plaintiff has satisfied the traditional four-factor test for injunctive relief. But, Plaintiff's proposed injunction requires modification to ensure compliance with Rule 65(d). Several paragraphs of the proposed injunction are not limited to the United States, and there is no basis for an extraterritorial injunction. In addition, the Court must expressly limit the prohibition on Defendants use of Plaintiff's marks to infringing uses. See e360 Insight v. The Spamhaus Project, 500 F.3d 594, 604 (7th Cir. 2007) (courts must "'tailor injunctive relief to the scope of the violation found'" (quoting Nat'l Org. for Women, Inc. v. Scheidler, 396 F.3d 807, 817 (7th Cir. 2005))). For example, hypothetically, if Defendants market a radar gun using the mark "Speed Detect" they should be free to continue to do so. Finally, the Court should excise any reference to the "curved shape" of Plaintiff's product, the arrangement of the buttons on Plaintiff's product, and any individual buttons for selecting levels of stimulus and audible tone from the trade dress paragraph of the injunction, since Plaintiff has not shown that these are nonfunctional, and Plaintiff itself says the "curved shape" is "ergonomic[]," which suggests the product's shape is

motivated at least in part by functional concerns (Doc. 2, ¶ 32; Doc. 44, p. 5) Accordingly, I recommend the Court modify the injunction as set forth below.

### E. Plaintiff is Entitled to Recover Attorney's Fees

Although Plaintiff does not ask for damages, it does seek attorney's fees pursuant to 15 U.S.C. § 1117(a), which allows a prevailing party to recover fees in "exceptional cases." (Doc. 54 at 1, 12-13). A district court may find that "exceptional circumstances" exist only when the plaintiff has presented evidence of fraud or bad faith. Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir. 1982). Plaintiff has produced sufficient evidence of bad faith to support a finding of exceptional circumstances. The striking similarity between the two products dispels the possibility that Defendants' infringement was anything less than intentional. See Planetary Motion v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001) (willful infringement can support a finding of exceptional circumstances). Moreover, accepting the facts in the complaint as true, I am unable to think of any non-frivolous argument Defendants might have raised to defeat many of the claims in this action.

Even in exceptional cases, the district court has the discretion to deny an award of fees. Dieter v. B & H Industries of Southwest Fla., 880 F.2d 322, 329 (11th Cir. 1989). Here however, there are no facts to suggest that a fee award is unwarranted given the willfulness of Defendant's infringement. And, Plaintiff has elected to forgo a damage award despite being legally entitled to one. Accordingly, I find that exceptional circumstances exist and recommend that the Court award Plaintiff its attorney's fees.

### Recommendation

For the foregoing reasons I respectfully recommend that:

1. Plaintiff's Motion (Doc. 44) be **GRANTED**.

2. The Court enter judgment for Plaintiff High Tech Pet Products, Inc. and against Defendants Shenzhen Jianfeng Electronic Pet Product Co. and Velly Wei on Counts III and IV of the Complaint.

3. The Court dismiss counts I and II as moot

4. The Court enter an order permanently enjoining Defendants; their officers, agents, servants, employees, and attorneys; and anyone in active concert or participation Defendant or their officers, agents, servants, employees, and attorneys, from:

   a. Selling, offering for sale, marketing, promoting, or advertising in the United States any electronic pet fencing or control system or device or any electronic pet training collar system or device using a trade dress that is identical or confusingly similar to the trade dress used to market and sell Plaintiff's electronic dog fence or electronic pet training collar systems. Trade dress includes, but is not limited to, any distinctive and nonfunctional color scheme or overall layout of Plaintiff's product, and any distinctive and nonfunctional color scheme, layout, or photographs used on packaging or otherwise to market Plaintiff's product.

   b. Using the marks BARK TERMINATOR, HIGH TECH PET, HUMANE CONTAIN, PROPORTIONAL STIMULUS, PULSED PROPORTIONAL STIMULUS, and SPEED DETECT, or any colorable imitation thereof, in connection with advertising, marketing, promoting, offering for sale, or selling in the United States electronic pet fencing or electronic pet training collar systems or devices.

5. The Court find that this case is "exceptional" pursuant to 15 U.S.C. § 1117(a), and that Plaintiff is entitled to an award of attorney's fees.

      6. Plaintiff be afforded an opportunity submit evidence of its attorney's fees.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on February 12, 2015.

                                        THOMAS B. SMITH
                                        United States Magistrate Judge

Copies furnished to:

      Presiding United States District Judge
      Counsel of Record
      Any Unrepresented Parties